Per Curiam.

These pleadings require the opinion of the court upon two points made by them. 1st. Whether the deed from Frank Allison to John Allison contains a covenant that the tract of land thereby conveyed should, in quantity, comprise 300 acres; and 2dly. Whether by the declaration a sufficient breach of the covenant of warranty is assigned.
The first depends on the construction of the deed, which is always matter of law, for there is no express covenant introduced by the parties for this purpose and to this effect, unless, therefore, one is raised by construction from the premises in the deed, no such covenant exists. I am much relieved in this case from the reflection that I am not travelling on untrodden ground: the subjeethas often ‘undergone judicial discussion, and a train of decisions of the highest respectability has preceded the present. In -England it is settled that if a man lease to another his meadows in D. and S. containing ten acres, and in truth they contain twenty, all will pass, see 4 Johns. Rep. 40, cites 13, Viner. 79, pl. 24. If then the grantees could take where the tract or parcel contained more than the quantity mentioned, and when the words more or less do not occur, it would seem quite unreasonable and inconsistent that the grantor should be made responsible when the quantity is less. The supreme court of the State of Connecticut has decided in the case of Snow vs. Chapman, that where lands were specifically bounded and described, and were stated in the deed to contain 110 acres, an action of covenant would not lie on the covenant of seisin, though in truth the quantity was only 90 acres: because *19 the deed granted nothing but the lands within the boundaries, and to those lands only the covenants related. 1 Root. 528. This case is to the very point, for if the express covenant of seisin extended only to land within the boundaries, the quantity specified, notwithstanding the express covenant, must do the same and no more; for if seisin is measured by boundary, and the deed gives only what is included therein, and circumscribed thereby, a fortiori, the warranty, which means protection of, or indemnification for what is given does the same. The next case is in the supreme court of the State of New York, Man & Tales vs. Pearson. Pearson gave his bond to Man & Tales to convey to them by deed lot No. 78, in the township of Lysander containing COO acres. Pearson delivered them a deed for the same lot, describing it as containing 600 acres more or less; it in fact contained only 4214 acres, and the question was whether the deed in its legal operation was not as extensive as any deed the defendant Pearson was bound to give; and this depended upon whether in the premises of the deed exhibiting the land granted, the enumeration of quantity is of the essence of the contract or is matter of description only. And majority of the court, consisting of Spencer, Tomkins and Kent, C. J. were of opinion that it was only description, and not amounting to a covenant. The two dissenting Justices, Thompson and Livingston, grounded themselves upon this, that the description being general, lot No. and the quantity superadded,it became an essential of the description; but they expressly admitted that the lot had been described by metes and bounds, it would have controlled the quantity, 2 John. Rep. 42, which makes this decision an unanimous one as respects case before the court. The next case I shall notice Powell vs. Clerk, in the supreme court of the State Massachusetts. In this case it was decided that in a of conveyance of land as limited by certain monuments, lines and courses, and also as containing so many and rods, the words expressing the quantity do not mount to a covenant that the land contains that quantity, *20 arc merely descriptive of the land. Parsons, C. J. in delivering the opinion of the court, says, upon the con-struclion of the deed declared upon, we are of opinion, the words expressing the quantity do not amount to a covenant but are only descriptive; being definitely limited, the contents could be easily ascertained, and if the plaintiff chose to avoid that trouble and rely on the estimation of the defendant, he should have taken care that an express covenant was introduced into the deed. In a conveyance of land by deed in which the land is certainly bounded it is very immaterial whether any and what quantity is expressed: for the description by the boundaries is conclusive. And where the quantity is mentioned in addition to a description of the boundaries the whole must be considered as mere description, and the quantity yield to the boundary whether it is more or less than that actually contained within the limits expressed. 5 Mass. 355. The last case I shall notice on this point is from the 6th vol. of Binney’s reports, to shew that the same doctrine prevailed in Pennsylvania as in Connecticut, New York and Massachusetts. It is the case of Smith vs. Evans, which I do not notice so much for the purpose of proving the point and the correctness of the decision on questions of this kind, which however it does, but which I consider unnecessary after the foregoing cases, but more especially to shew the coincidence of opinion between Pennsylvania and the above enlightened States upon the same matter; and this case further expressly recognizes the principle of the above cases and refers to them. 6 Bin. 109. would observe a few words upon the words “more or less” deeds similar to the one declared on in this case, not because I think it necessary in forming a conclusion upon the present question, but because these words were much reli-upon by the plaintiffin the argument as operative words deeds, and their non-existence in the present deed, as conclusive of the construction the plaintiff contended for. was argued that the expression “more or less” in a deed following the enumeration of acres, neutralized that enumeration and qualified it so as to bend to what *21 ever number of acres the deed might actually contain. This is attaching to these words a degree of importance, which ■ the decisions of law have hitherto not thought proper to allow, and necessarily presumes and admits that the enumeration of quantity, where they do not exist, amounts by construction to a covenant that such enumeration is correct and binding on the parties. Now it is a conclusive answer to this that m the case in 5 Massa. 355, not only stated numerically the quantity of acres in each tract, but even descended to the fraction of an acre, and expressed such fraction in rods by number. If, therefore, specification of quantity in this part of a deed could be admitted by any means as evidence of the intention of the parties to raise a contract upon this matter, this precise specification must have done it. But the court there say, it is very immaterial whether any, or what quantity is expressed, it must yield to boundary which is conclusive.
But in contracts for land where these words more orless are expressed, and can be noticed as having any efiect upon the quantity to which they are an adjunct, what is their proper operation, how far do they affect the quantity stated; do they extend to the whole of the excess or deficit between the quantity stated, and the actual quantity, so as in the one case to bar the grantor, and in the other the grantee, from remuneration in those cases where otherwise from their insertion they would be entitled? We have adjudications on this point both in the English and American courts. In Day vs. Flew, Owen 133,9 Vin. 343, pl. 10, sine plus sine minus, shall be intended of a reasonable quantity, more or less, by a quarter of an acre, or two or three at the most. Sugden says, page 200, this expression applies to a small quantity. In Quesnel vs. Woodlief, 2 Hen. and Munf. 173, note, it was decided, that this expression must be restricted to a reasonable or usual allowance for small errors in surveys, and for variations in instruments. In Nelson vs. Matthews, same book 1G7, it was adjudged that a deficiency of 8 acres in a tract of 552, was no more than a purchaser who buys for *22 more or less might reasonably expect, but that it was otherwise as to a dificiency of 20 acres.
From this view of the case the deed declared on con* tains no such covenant as that in the declaration mentioned, to wit, that the defendant’s testator covenanted that the lines and courses in his deed to John Allison contained 300 acres. Tne demurrer, therefore, as to this must he supported.
The second question is, whether there is a sufficient breach of the covenant of warranty assigned. The breach assigned is, that John Chester, at the time of the executing, sealing and delivering the deed declared upon, had an older and better title to twenty five acres of said tract in said deed specified according to the courses thereof. To come at this question we must see what the covenant of warranty imports. Some light will necessarily flow from the circumstance, that it is a substitute for the ancient warrantia Chart®, not in use in this country and entirely superseding it in modern practice. 7 Ba. Abr. 239. Note. Parsons C. J. in 3 Massa. 545, says, this remedy was adopted by our ancestors as early as remedies for evictions of land sold with warranty were necessary, and that even in England before the emigrations of our ancestors, says he, the tenant in being lawfully ousted by a title paramount might maintain a personal action of covenant broken on a real covenant of warranty, and for this he cites, 1 Brown. 21, 2 Brown. 164, 165, (but see 2 Ba. Abr. 67 contra.) The object of the warrantia Chari® was recompense for lost land, founded on a covenant real, generally raised by deed, and was either implied by the word dedi, which extended to the life of the grantor, or express upon the clause of warranty therein contained. The judgment was to yield other lands and tenements to the value of those that shall be evicted by a former and better title. 7 Ba. Abr. 225. It is true that the plaintiff in the warrantia Chart® might have judgment upon the warranty before eviction; for, as to the purpose of fixing the warranty and binding the possession of the warrantor, i t was personal; he *23 was not, therefore, under the necessity of delaying his of warrantia Charlee, until he was impleaded upon the elder and better title: for, in the mean time, the warrantor might have aliened his land, and defeated his redress; he might, therefore, bring his suit but he could not have execution, the habere facias ad valentiam, until he had taken loss as Lord Hobart expresses it, that is until eviction by such elder and better title; when the execution would supersede all mesne alienation from the date of the writ of the warrantia Chartae, to the issuing] the execution. See Hob. 21,22.
Which of these two authorities (and they are both respectable) is the correct one is a matter of no consequence in the application of the principle constituting the distinction to the action used here. Both the warrantia Chart® and the personal action of covenantbrokenlay on the same clause of warranty. And the greater part of the English authorities make the distinctions in giving the warrantia Chart® upon an eviction or loss of the freehold and the personal action of covenant upon the eviction or loss of a less estate, a lease for years for instance. Both were founded on the self same clause and the one or the other was used according to circumstances, and such is the case of Pencombe and Pridge, Hobart’s reports upon error in the Exchequer chamber, and the only question was, says the book, “whether upon this clause of warranty real, annexed unto a freehold an action of covenant to recover damages could be grounded, and it was agreed by all the judges that this action of covenant will lie, because, though the warranty was annexed to a freehold, yet the breach and impeaching was not of a freehold but of a chattel (that is to say) of a lease for years for which there could be neither a voucher, rebutter or W. C. so that though there had been a judgment in the W. C. in this case, yet neither upon entry or upon recovery in ejectment upon this case, there could be neither V. R. or value on the W. C. and therefore a real warranty is a covenant real, where the fieehold is brought in question; but where alcaoc is in question or any other loss that doth *24 not draw away the freehold, it may be used as a personal . , . , i ., . covenant whereupon damages may be recovered; so it is both a real and personal covenant to several ends and respects. Hob. 4;.”
I have cited this case at some length and in the words of the report as not only shewing the analogy between the W. C. and the personal action of covenant, that the latter was used where the former could not, and for the same reason as the W. C. is not used here; the personal action of covenant is used as a substitute for tlie same purposes, that is recompense for loss, and differing only in mode — the one,land to the value; the other,damages to the value. That both lay on the same clause of warranty in the same deed. But more especially to prove the very point before the court, — to wit: what constitutes a breach of the warranty where a personal action of covenant is brought. This case makes no difference between the breach in W. C. and the breach in personal actions of covenant broken — the present action; in both these there mustbealoss produced and evidencedby an eviction. This same point is also clearly and certainly laid down in the case of Roll vs. Osborn, same Book 26; in staling the purport and effect of a warranty it says “warranty is against all eviction by a superior title, either by entry or by action.”
The breach in the present action does not come up to what is here required. It says that at the time of executing the deed on which this action is founded, one John Chester had an older and better title to twenty five acres of the land contained within the courses of the conveyance and here it stops; this breach alleges no loss in consequence of Chester’s older and better title. Chester never may exert it and the plaintiff may never be damnified. Warranty lies upon the loss sustained by the exertion of an older and better title or recovery by action and execution.
The breach assigned in this declaration would have been sufficient upon a covenant of seisin or on a covenant of full power lo convey. These covenants go to the title *25 only and refer not to the possession: if at the time of entering into these covenants of title, a better title is shewn in a third person, they are broken the instant they are made and the possession is out of the question; but covenant of warranty refers to a future act and to time subsequent to the making of the warranty; nearly allied though not in all respects to the covenant of warranty is the covenant for quiet enjoyment, which is an assurance against the consequences of a defective title, and of any disturbances thereupon.
The American decisions have followed the English on this point — I shall quote one or two to shew this. In Kent vs. Welch, 7 Johns. 258, it was held that in an action on a covenant contained in a deed by which the grantor gave and granted and engaged to warrant and defend the land! against all claims &c. that no action could be main-j tained, either on the implied or express covenant or war-? ranty in law, without alleging and proving an eviction, *■ and that the express warranty qualified and restrained any | implied covenant of seisin arising from the word “giveJ and in Vanderkarr vs. Vanderkarr, 11 Johns. 122, it was \ held that an express covenant in a deed takes away all | implied ones. That a general covenant of warranty in a ^ deed does not imply a covenant of seisin, nor can the ¡ want of seisin in the grantor, and that he had no such, land, be assigned as a breach of the covenant of warranty; nor can the plaintiff maintain an action for the breach ( of the covenant of warranty without alleging and proving a lawful eviction. The declaration in the present, case not shewing an eviction cannot be supported and ; judgment must be given for the defendant upon the de-; murrer.
Haywood, Judge, contra upon the first point — accord on the second point.